# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of David Paul Traywick, Respondent.

Appellate Case No. 2021-000021

Opinion No. 28037
Heard May 25, 2021 – Filed June 18, 2021

## DEFINITE SUSPENSION

Disciplinary Counsel John S. Nichols and Assistant Disciplinary Counsel Kelly B. Arnold, both of Columbia, for the Office of Disciplinary Counsel.

Allyson Haynes Stuart and Nathan M. Crystal, of Charleston, for Respondent.

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).  In the Agreement, Respondent admits misconduct, consents to the imposition of any sanction ranging from a confidential admonition to a definite suspension of six months, and agrees to pay the costs incurred by ODC and the Commission on Lawyer Conduct in investigating and prosecuting this matter.  We accept the Agreement and suspend Respondent from the practice of law in this state for six months.

## I.

Beginning in June 2020, ODC received complaints from forty-six separate individuals regarding statements Respondent made on his Facebook page.  At that time, Respondent maintained a personal Facebook account with a privacy setting of

"public," meaning his posts were visible to anyone, not just his Facebook "friends," and even if the person did not have a Facebook account. In his Facebook profile, Respondent identified himself as a lawyer and referenced his law firm.

On June 12, 2020, this Court placed Respondent on interim suspension. *In re Traywick*, 430 S.C. 364, 844 S.E.2d, 674 (2020).

## II.

ODC identified twelve statements Respondent made in Facebook posts ODC believes tended to bring the legal profession into disrepute and violated the letter and spirit of the Lawyer's Oath. *See* Rule 402(h)(3), SCACR (requiring lawyers to "maintain the dignity of the legal system"). Respondent admits these public statements tended to bring the legal profession into disrepute and acknowledges that through his statements, he violated the Lawyer's Oath. Respondent also admits his misconduct constitutes grounds for discipline under the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(5) (conduct tending to bring the courts or the legal profession into disrepute) and 7(a)(6) (violation of the Lawyer's Oath).

## III.

All twelve of Respondent's statements are troubling. Nevertheless, we focus our analysis on only two of them. We do this mindful of Respondent's right to freedom of speech under the First Amendment to the United States Constitution. Importantly, however, Respondent does not raise a First Amendment challenge to discipline. His attorney wrote the Court after oral argument stating, "We do not think it is necessary for the Court to address First Amendment issues." For this reason, we will not analyze the impact of the First Amendment.

On April 5, 2020, Respondent posted an offensive comment regarding tattoos to his Facebook page. In the comment, he challenged his readers, "Prove me wrong. Pro tip: you can't." A reader wrote back suggesting Respondent prove he was right regarding his theory about tattoos. Respondent then stated,

> The general statement has exceptions, such as for bikers, sailors, convicts or infantry. But these college educated, liberal suburbanites. No, the rule was written for these boring mother fuckers. And they are everywhere. Fuck em. Especially these females, Jesus Christ!

On May 25, 2020, George Floyd—a black man—was murdered by a white police officer in Minneapolis, Minnesota. The racially-charged atmosphere that resulted from Mr. Floyd's murder is well-known. On June 3, 2020, at the height of this racially-charged intensity, Respondent posted the following to his Facebook page,

> Here's how much that shitstain's life[1] actually mattered: Stock futures up. Markets moved higher Monday and Tuesday. Fuck you. Unfriend me.

We find these two comments warrant a six-month suspension. These comments are not expressive; they are expressly incendiary. Both are statements by a lawyer on his social media account identifying him as such and listing the name of his law firm. The statements were intended to incite, and had the effect of inciting, gender and race-based conflict beyond the scope of the conversation Respondent would otherwise have with his Facebook "friends." The fact Respondent is a lawyer exacerbated this effect.

We are particularly concerned with the statement regarding Mr. Floyd. We find this statement was intended to incite intensified racial conflict not only in Respondent's Facebook community, but also in the broader community of Charleston and beyond. We hold this statement in particular tended to bring the legal profession into disrepute, violated the letter and spirit of the Lawyer's Oath, and constitutes grounds for discipline under Rules 7(a)(5) and 7(a)(6), RLDE, Rule 413, SCACR.

Accordingly, we accept the Agreement and suspend Respondent from the practice of law in this state for six months. The suspension is retroactive to Respondent's interim suspension on June 12, 2020.[2] We further impose the following conditions to which Respondent consented in the Agreement or at oral argument: (1) within one year from the date of this Opinion, Respondent shall complete at least one hour of diversity education approved by the Commission on Continuing Legal Education and Specialization; (2) within three months from the date of this Opinion, Respondent shall complete a comprehensive anger management assessment with a licensed mental health doctor or therapist; (3) also within three months, Respondent shall undergo an evaluation through the Lawyers Helping Lawyers program of the

---

[1] Respondent was referring to Mr. Floyd.

[2] Pursuant to Rules 2(o) and 17(b), RLDE, Rule 413, SCACR, interim suspension is automatically lifted upon this "final determination" of disciplinary proceedings.

South Carolina Bar; (4) for a period of one year from the date of this Opinion, Respondent shall comply with any and all recommendations from these assessments, including treatment; (5) for a period of one year from the date of this Opinion, Respondent shall report quarterly to the Commission, including submitting an affidavit of compliance and a statement from the provider of any recommended treatment; and (6) within thirty days of the end of the one-year period beginning with the date of this Opinion, Respondent shall file with the Commission a final report from any treatment provider, including a complete assessment of Respondent's mental health status and specifically addressing Respondent's compliance with the recommended course of treatment. The report must also contain the treatment provider's recommendations for future treatment, if any.

Within thirty days of the date of this opinion, Respondent shall pay or enter into a reasonable payment plan with the Commission to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission.

**DEFINITE SUSPENSION.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**